UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Douglas C. Pierro,

      Plaintiff,

    v.                                                     Civil Action No. 2:13-CV-6

Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 6, 9)

Plaintiff Douglas Pierro brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Pierro's motion to reverse the Commissioner's decision (Doc. 6)[1], and the Commissioner's motion to affirm the same (Doc. 9). For the reasons stated below, the Court DENIES Pierro's motion and GRANTS the Commissioner's.

---

[1] Pierro has also filed a Reply (Doc. 12), which improperly contains arguments not made in Pierro's motion and not responsive to arguments made in the Commissioner's brief. The scope of a reply brief must be limited to addressing arguments raised in the opposing party's brief; and a reply is not an appropriate vehicle for presenting new arguments or legal theories to the court. *See Connecticut Bar Ass'n v. United States of America*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)).

**Background**

Pierro was forty-seven years old on his alleged disability onset date of June 8, 2011. He completed high school, and has work experience as a laborer at a lumber mill, a truck driver at an orchard, a truck loader for a food shipping company, and a janitor for a cleaning services company. (AR 29–30, 173.)

Pierro has a history of chronic right knee pain. In October 2010, he had knee surgery, and thereafter, the pain subsided. (AR 230–33.) On June 8, 2011, however, he stepped in a hole at work, twisting his right knee and causing pain and swelling, preventing him from being able to work. (AR 233.) By approximately two weeks later, the knee was "feeling much better," and Pierro was "looking forward to going back to his orchard job." (AR 235.) On July 6, 2011, Pierro filed applications for social security income and disability insurance benefits, alleging disability starting on the day he twisted his knee, June 8, 2011. (AR 9, 125–31.) In November 2011, Pierro reported that his knee pain had worsened and thus he was working only part time (in a construction job). (AR 262.) Pierro told medical providers that his knee pain was radiating down his leg and into his calf, and that he was also having back pain. (AR 266, 269.) This pain was limiting Pierro's ability to work and engage in recreational activities, and by December 2011, he was no longer working. (AR 269.) After an epidural steroid injection to the right knee provided no relief (AR 266) and an MRI of Pierro's lower back showed a "clinically significant disk herniation" (AR 268), Pierro underwent back surgery in January 2012 (AR 273). Around the same time, Pierro reported that, in addition to his right leg pain, he also had left leg pain. (AR 271.) By February 2012, six weeks after his

back surgery, Pierro felt like he had regained strength in his left leg, and his leg pain was "feel[ing] much better." (AR 277.)

Pierro's disability application is principally based on his chronic pre- and post-operative knee and back pain. He also alleges disability due to right shoulder pain, wrist pain, and chest pain. According to Pierro, as a result of these impairments, he is unable to stand or walk for prolonged periods and is required to use a cane. (AR 31, 163, 168.) Pierro's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. The hearing was held on August 6, 2012 by Administrative Law Judge ("ALJ") Thomas Merrill. (AR 23–40.) Pierro appeared and testified, representing himself and opting against representation by an attorney. (AR 25–26.) A vocational expert ("VE") also testified at the hearing.

On September 17, 2012, the ALJ issued a decision finding that Pierro was not disabled under the Social Security Act at any time from his alleged onset date through the date of the decision. (AR 9–18.) Thereafter, the Appeals Council denied Pierro's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–3.) Having exhausted his administrative remedies, Pierro filed the Complaint in this case on January 10, 2013. (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that Pierro had not engaged in substantial gainful activity since his alleged disability onset date of June 8, 2011. (AR 11.) At step two, the ALJ found that Pierro had the severe impairment of degenerative joint disease of the right knee. (AR 12.) Conversely, the ALJ found that Pierro's back pain, left hip pain, and chest pain/syncopal event were nonsevere, and that Pierro's wrist pain was not a medically determinable impairment. (*Id.*) At step three, the ALJ found that none of Pierro's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 13.) Next, the ALJ determined that Pierro had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that he could only occasionally climb, balance, stoop, kneel, and crouch. (*Id.*) Given this RFC, the ALJ found that Pierro was unable to perform his past relevant work. (AR 16.) But based on the VE's testimony, the ALJ determined that Pierro could perform other jobs existing in significant numbers in the national economy, including cashier, fast-food worker, and office helper. (AR 17.) The ALJ concluded that Pierro had not been under a disability from his alleged disability onset date through the date of the decision. (AR 17–18.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his

5

"impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Pierro argues that the ALJ erred in determining at step two that his back impairment was not severe. He further asserts that the ALJ erred in failing to analyze the

6

opinion of treating physician Dr. Stephen Kornbluth at step two, and in assigning limited weight to Dr. Kornbluth's opinion later in the decision. Finally, Pierro argues that the ALJ's determination that he was not entirely credible is not supported by substantial evidence. According to Pierro, these errors resulted in an improper RFC determination. The Commissioner disagrees, and asserts that the ALJ's decision applies the correct legal standard and is supported by substantial evidence.

## I.     ALJ's Assessment of the Severity of Pierro's Back Impairment

Pierro asserts that the ALJ failed to apply the correct legal standard in determining that his back impairment was "nonsevere." (AR 12.) The regulations define a "severe" impairment as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *Meadors v. Astrue*, 370 F. App'x 179, 182 (2d Cir. 2010). The Social Security Administration has explained that an impairment is "not severe" when the medical evidence establishes only a "slight abnormality" or a combination of slight abnormalities which would have no more than a "minimal effect" on the claimant's ability to work. SSR 85-28, 1985 WL 56856, at *3 (1985).

The ALJ found that Pierro's back impairment was not severe because his back pain "did not last for 12 months duration and does not result in more than a minimal impact on his ability to perform basic work functions." (AR 12.) Substantial evidence supports this finding. As the ALJ discussed (*id.*), Pierro's disc herniation—the apparent cause of his back pain—was not diagnosed until November 2011, five months after the alleged disability onset date of June 8, 2011 (AR 267–70). Although the herniation could

7

have existed earlier, the medical evidence reflects that Pierro complained of knee pain, not back pain, prior to November 2011. (*See, e.g.*, AR 230–33.) Moreover, Pierro's undated Disability Report which was filed in support of his disability application lists right knee pain and wrist problems, not back pain, as the conditions limiting his ability to work. (AR 157.)

Pierro argues that the ALJ should have considered Dr. Kornbluth's opinion that Pierro "has been affected by his herniated disc and consequences thereafter for a full year" and "should be considered for long[-]term disability." (AR 296.) But even assuming the medical evidence supports that opinion, the statement provides no insight into the *severity* of Pierro's back impairment. The mere statement, even by a treating medical provider, that an impairment "affected" a claimant and thus he or she "should be considered for long[-]term disability," is not helpful to the ALJ's step-two severity analysis of whether the impairment "*significantly limit[ed]* [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (emphasis added).

Pierro also argues that the ALJ should have recognized that his back impairment may have manifested in the knee pain that Pierro complained of in June 2011, given that Dr. Lighthart "surmised" in November 2011 that Pierro's knee pain, which persisted even after injections, "was originating from the lumbar spinal region." (Doc. 6 at 9 (citing AR 266).) But within weeks of Pierro's initial appointment with Dr. Lighthart in June 2011, Dr. Lighthart stated that Pierro was feeling "much better" and could "return to work with [one] week of light duty and then resume all normal work activities thereafter." (AR 235.) Pierro did not return to see Dr. Lighthart until approximately five months later, in

8

November 2011.  (AR 262.)  Thus, whether Pierro's June 2011 pain derived from the knee or the back, it does not appear to have significantly limited Pierro's ability to work at that time.  Moreover, even if the ALJ erred in failing to recognize that Pierro's knee pain may have been caused by his subsequently discovered disc herniation, it was harmless error because the ALJ considered Pierro's knee pain as a severe impairment, and accounted for that impairment in his RFC determination.

Most importantly, the ALJ's decision that Pierro's back impairment was not severe is supported by the medical evidence, which demonstrates that his back pain significantly improved after he had back surgery in January 2012.  For example, on February 10, 2012, Pierro reported to Physician's Assistant Christa Fratino that he was doing "much better" and was "doing well" overall, despite still complaining of some aches and pains in his back and legs when he "[did] too much or [stood] for extended periods of time."  (AR 276.)  One week later, Pierro reported to Dr. Matthew Zmurko that he was having a little discomfort in his left groin but was otherwise feeling "much better."  (AR 277.)  Dr. Zmurko noted that Pierro was "ambulating with a normal reciprocating gait pattern" and had almost full motor strength.  (*Id.*)  By April 2012, Dr. Zmurko recorded that, although Pierro was having some groin discomfort, his left leg was "doing better" and he had full motor strength.  (AR 278.)  In June 2012, Pierro told Dr. Zmurko that he was having "discomfort" in his back, but the Doctor noted normal objective findings and recommended merely that Pierro do "some exercises for his back."  (AR 315.)  This evidence supports the ALJ's finding that Pierro's back impairment did

9

not have more than a minimal impact on his ability to perform basic work functions, and thus was "nonsevere." (AR 12.)

As briefly mentioned above, even assuming the ALJ erred in finding that Pierro's back impairment was not severe, the error was harmless because at step two, the ALJ identified another severe impairment, degenerative join disease of the right knee, and thus proceeded with the subsequent steps of the sequential evaluation. (AR 12.) In those subsequent steps, the ALJ specifically considered Pierro's allegations of a back impairment. (*See* AR 15-16.) *See Reices-Colon v. Astrue*, No. 12-3013, 2013 WL 1831669, at *1 (2d Cir. May 2, 2013) (unpublished table decision) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps); *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (noting ALJ did not err in finding disc herniation nonsevere because ALJ identified other severe impairments at step two so claim proceeded though sequential evaluation and all impairments were considered in combination); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003).

## II. ALJ's Analysis of Dr. Kornbluth's Opinion

Next, Pierro argues that the ALJ erred in his analysis of the opinion of Dr. Kornbluth (Doc. 6 at 9–10), who treated Pierro beginning in December 2011 (AR 441–45). In May 2012, Dr. Kornbluth stated in a Medical Source Statement of Ability to Do Work-Related Activities (Physical) ("MSS") that Pierro had just been released from the hospital "for [the] suspected drug effect[s] from treating . . . [an] injury" and was "not able to work in any capacity at this time." (AR 287.) The Doctor further stated that he

10

would "re[-check] [Pierro]" when he was ready to prepare a "full eval[uation]" and determine the extent of Pierro's limitations at that time. (*Id.*) Notably, Dr. Kornbluth did not complete the first five pages of the six-page MSS, intentionally leaving blank each box describing the severity of Pierro's physical limitations. (AR 282–87.) Approximately two months later, in July 2012, Dr. Kornbluth stated in a letter that, although Pierro was able to do independent activities of daily living, he "cannot sit or stand in one position for any length of time without increasing his discomfort." (AR 295.) The Doctor further stated that Pierro "ha[d] been affected by his herniated disc and consequences thereafter for a full year," and "should be considered for long[-]term disability." (AR 296.)

      The opinion of a treating physician such as Dr. Kornbluth is afforded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(c)(2). The deference given to a treating physician's opinion may be reduced in consideration of other factors, including the length and nature of the physician's relationship with the claimant, the extent to which the medical evidence supports the physician's opinion, whether the physician is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to . . . contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Here, the ALJ afforded "[l]imited weight" to Dr. Kornbluth's opinion. (AR 15.) For the foregoing reasons, I find that substantial evidence supports this finding, and that the ALJ gave "good reasons" to support it. *See*

20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

First, as alluded to earlier, Dr. Kornbluth's statement that Pierro "*should be considered* for long[-]term disability" (AR 296 (emphasis added)) is not particularly helpful to the disability analysis because it reflects the Doctor's belief that Pierro merely *may be* disabled, not that he *is* disabled. Moreover, even if Dr. Kornbluth had stated that Pierro *is* disabled, the ALJ could not have afforded significant weight to that opinion because it is the Commissioner, not any treating provider, who is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability," 20 C.F.R. § 404.1527(d)(1). *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (even "[a] treating physician's statement that the claimant is disabled cannot itself be determinative"); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance.").

Second, Dr. Kornbluth's opinion that Pierro "cannot sit or stand in one position for any length of time without increasing his discomfort" (AR 295) is also not particularly helpful to the disability analysis because the phrase "for any length of time" is vague. Clearly, Dr. Kornbluth did not mean that Pierro could not sit or stand for *any* amount of time at all, as the record does not support such an extreme limitation. Moreover, even assuming Dr. Kornbluth meant to opine that Pierro could not sit or stand without discomfort for the period of time required to perform "light" or "sedentary" work, a

12

claimant's "increased discomfort" (AR 295) does not, in and of itself, imply a functional limitation rising to the level of a disability within the meaning of the Social Security Act. *See Markle v. Barnhart*, 219 F. Supp. 2d 367, 372 (W.D.N.Y. 2002) ("[A] determination of disability requires more than mere inability to work without pain or discomfort.") (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)). Indeed, many people are able to work, despite being uncomfortable. Thus, the ALJ was not required to give substantial weight to Dr. Kornbluth's vague and unhelpful opinion that Pierro experiences discomfort when sitting or standing for any length of time.

Pierro argues that the ALJ should have sought "amplification" of this opinion. (Doc. 12 at 1 n.1; *see also* Doc. 6 at 10.) There is no indication that Dr. Kornbluth himself would have been able to provide a greater degree of specificity regarding his opinion. As discussed throughout this Opinion and Order, Dr. Kornbluth's own treatment notes do not support an opinion containing limitations more severe than the ALJ's RFC determination. An ALJ's duty to develop the record is not limitless. The Second Circuit explained: "where there are no obvious gaps . . ., and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks omitted). Here, the ALJ properly determined that he could render a decision based on the 544-page record already before him, despite the arguable vagueness in Dr. Kornbluth's opinion.

Third and finally, the ALJ accurately noted that Dr. Kornbluth himself opined that short-term, not long-term, disability was appropriate for Pierro. (AR 16.) Dr. Kornbluth

13

stated in his January 2012 treatment notes that "short[-]term disability seems appropriate for [Pierro's] present problem, but not long term." (AR 342.) Similarly, Dr. Kornbluth stated in his May 2012 MSS that Pierro was unable to work "*at this time*." (AR 287 (emphasis added).) Additionally, the ALJ correctly found that Dr. Kornbluth's July 2012 opinion that Pierro "should be considered for long[-]term disability" due to his herniated disc (AR 296) was inconsistent with Dr. Zmurko's April 2012 physical examination findings demonstrating "a normal reciprocating gait pattern, a negative straight leg raise test and 5/5 motor strength." (AR 16 (citing AR 278); *see also* AR 315 (Dr. Zmurko's June 2012 treatment notes, indicating that Pierro had a "fairly normal reciprocating gait pattern," full motor strength, and only "mild discomfort" in his hip).) Dr. Kornbluth's July 2012 opinion is also inconsistent with his own treatment notes: in December 2011, Dr. Kornbluth recorded that Pierro was "feel[ing] well with minor complaints" (AR 441); on July 11, 2012, Dr. Kornbluth recorded that Pierro's back pain was "less severe and [Pierro] seem[ed] to tolerate [it] and be helped . . . by the Cymbalta" (AR 392); and on July 31, 2012, Dr. Kornbluth recorded that, although he had dictated a letter supporting Pierro's disability application, Pierro was "not yet at maximum improvement" (AR 390). Likewise, Dr. Kornbluth stated in his July 2012 opinion that he "was not sure [Pierro] has made complete recuperation at this time," and that he was "still working with [Pierro] to achieve maximal medical improvement." (AR 296.)

Accordingly, I find that substantial evidence supports the ALJ's decision to afford little weight to Dr. Kornbluth's opinion, and the ALJ gave good reasons for that decision.

### III. ALJ's Credibility Determination

Finally, Pierro asserts that the ALJ's credibility determination is not based on substantial evidence. It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1982)). "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Here, the ALJ determined that Pierro's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." (AR 14.) The ALJ's principal reason for this determination was that Pierro "failed to establish a correlation between his allegations and the objective medical evidence." (*Id.*) As discussed above, Pierro's mostly normal examination findings support this rationale. (*See, e.g.*, AR 277–78, 315, 379–80, 389.) And the ALJ was entitled to rely on this medical evidence to discount Pierro's credibility. *See* 20 C.F.R. § 404.1529(c)(1) ("[i]n evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including . . . the signs and laboratory findings"); *id.* at (c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence

15

of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

In determining Pierro's credibility, the ALJ also noted that, although Pierro testified that he had not worked since his alleged disability onset date, the record documents that he was doing part-time construction work in November 2011. (AR 15 (citing AR 331).) Although the work was only part time, it was proper for the ALJ to consider this evidence in determining Pierro's credibility. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Berger v. Apfel*, 516 F.3d 539, 546 (7th Cir. 2008) ("[T]he fact that [the claimant] could perform some work cuts against his claim that he was totally disabled.").

Finally, as part of his credibility determination, the ALJ considered that Pierro was able to "maintain an ability to achieve his activities of daily living." (AR 14 (citing AR 165–67).) For example, the ALJ accurately stated that Pierro reported that he "prepares meals and performs household chores including vacuuming, laundry[,] and making beds." (AR 14 (citing AR 165).) The ALJ also accurately stated that Pierro "shops in stores and can manage his banking." (AR 14 (citing AR 166).) Indeed, Pierro stated in his Function Report that he "can fix just about anything" for his meals; does household chores daily for between ten and thirty minutes; and goes food shopping weekly for about thirty minutes at a time. (AR 165–66.) It was proper for the ALJ to consider Pierro's ability to do these daily activities in assessing the credibility of Pierro's complaints of pain and discomfort. *See Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009)

(citing 20 C.F.R. § 404.1529(c)(3)) ("in assessing the credibility of a claimant's statements, an ALJ must consider, inter alia, the claimant's daily activities").

I therefore find that substantial evidence supports the ALJ's credibility determination. *See Stanton*, 370 F. App'x at 234 ("We have no reason to second-guess the credibility finding . . . where the ALJ identified specific record-based reasons for his ruling.") (citing SSR 96-7p, 1996 WL 374186, at *4; *Schaal*, 134 F.3d at 502).

## Conclusion

For these reasons, the Court DENIES Pierro's motion (Doc. 6), GRANTS the Commissioner's motion (Doc. 9), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 26th day of September, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge